# 13-3070

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

_____

MATTHEW **ROACH,** MELISSA LONGO, GARRETT TITCHEN,
and CHRISTINA APPLE,
*Plaintiffs - Appellants,*

v.

**T.L. CANNON CORP.,** d/b/a Applebee's, et al.,
*Defendants - Appellees,*

_____

On appeal from the U.S. District Court for the Northern District of New York
(Hon. Thomas J. McAvoy, U.S. District Judge)

_____

**BRIEF OF *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFFS-APPELLANTS**

Jamie G. Sypulski
Law Office Jamie Golden Sypulski
150 South Michigan Avenue
Suite 1000
Chicago, Illinois 60603
(312) 332-6202

Douglas M. Werman
Werman Law Office, P.C.
77 West Washington Street
Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Attorneys for *Amicus Curiae*
National Employment Lawyers Association

*(additional counsel on following page)*

Terisa E. Chaw
National Employment Lawyers Association
417 Montgomery Street
Fourth Floor
San Francisco, California 94104
(415) 296-7629

# <u>TABLE OF CONTENTS</u>

Table of Contents ............................................................... iii

Table of Authorities ..............................................................v

Statement of *Amicus Curiae*.................................................1

Summary of the Argument .....................................................2

Argument...............................................................................6

I.     Like The Fair Labor Standards Act, The New York Labor Law Is A Remedial Statute Enacted To Eliminate Substandard Wages, And Restaurant Workers, Consistently Ranked Among The Lowest Paid Jobs In The Country, Have A Particular Need For The Protections Of The NYLL..................................................................................6

II.    The District Court's Interpretation Of *Comcast*, That *No* Class Can Be Certified Under Rule 23(b)(3) If Individualized Damages Inquiries Must Be Made, Is Erroneous, And Has Been Rejected By Other Circuits Considering That Interpretation ......................................................9

       A.  Under Third Circuit Case Law, Elements Of The Antitrust Class Claim In *Comcast* Had To Be Susceptible To Common Proof ..............11

       B.  Cases Certifying Rule 23(b)(3) Class Actions, Despite The Necessity Of Individual Damage Determinations, Are 'Legion,' And The *Comcast* Decision Does Nothing To  Affect Those Holdings.................13

            1.  Prior To *Comcast,* "Legions" Of Cases Held That Rule 23(b)(3) Classes Can Be Certified Even Where Damages Required Individual Calculation.....................................................13

            2.  Appellate Decisions After *Comcast* Continue To Hold That Individualized Damages Inquiries Do Not Preclude Rule 23(b)(3) Class Certification ...................................................16

III.    An Interpretation Of *Comcast* As Precluding Predominance In Wage
        And Hour Class Actions Where Individualized Owed Wages Vary
        Among Employees Clashes Directly With The 'Just And Reasonable
        Inference' Standard And Representative Evidence Derived From The
        Supreme Court's Decision In *Mt. Clemens* ...................................................20

Conclusion ............................................................................................................23

Certificate of Compliance with Rule 32(a)(7)(B) ...................................................26

# TABLE OF AUTHORITIES

## CASES

*Allen v. Board of Public Educ.*,
  495 F.3d 1306 (11th Cir. 2007) .................................................................21

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................15, 20

*Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*.
  133 S. Ct. 1184 (2013).................................................................9, 14, 15, 24

*Anderson v. Mt. Clemens Pottery Co.*,
  328 U.S. 680 (1946)..........................................................................*passim*

*Behrend, et al. v. Comcast Corp., et al.*,
  655 F.3d 182 (3d Cir. 2011) .......................................................................11

*Behrend v. Comcast Corp.*,
  264 F.R.D.150 (E.D. Pa. 2010)...................................................................11

*Butler v. Sears, Roebuck and Co.*,
  727 F.3d 796 (7th Cir. 2013) .................................................10, 16, 19, 24

*Carnegie v. Household Int'l, Inc.*,
  376 F.3d 656 (7th Cir. 2004) ....................................................................20

*Citicorp Industrial Credit, Inc., v. Brock*,
  483 U.S. 27 (1987)....................................................................................6, 7

*Comcast Corp. v. Behrend.* ___ U.S. ___,
  133 S. Ct. 1426 (2013)......................................................................*passim*

*Goldberg v. Wade Lahar Const. Co.*,
  290 F.2d 408 (8th Cir. 1961) ......................................................................8

*Grochowski v. Phoenix Const.*,
  318 F.3d 80 (2d Cir. 2003) ..................................................................20, 22

*In Re Hydrogen Peroxide Antitrust Litigation,*
   552 F.3d 305 (3d Cir. 1984) ........................................................................11

*In re Visa Check/ MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2d Cir. 2001) ........................................................................13

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*,
   No. 10-4188, 2013 U.S. App. LEXIS 14519,
   (6th Cir. July 18, 2013).........................................................................16, 19

*Kalloo v. Unlimited Mech. Co. of NY,*
   No. 11-cv-6215, 2013 U.S. Dist. LEXIS 147487,
   (E.D. N.Y. Oct. 10, 2013)............................................................................20

*Kolesnikow v. Hudson Valley Hosp*.,
   05 Civ. 09858 (PGG), 2009 U.S. Dist. LEXIS 42857,
   (S.D.N.Y. May 20, 2009).............................................................................21

*Leyva v. Medline Indust., Inc.*,
   716 F.3d 510 (9th Cir. 2013) ...............................................................*passim*

*Martin v. Selker Bros., Inc.,*
   949 F.2d 1286 (3d Cir. 1991) .....................................................................22

*Martin v. Tony & Susan Alamo Found.*,
   952 F.2d 1050 (8th Cir. 1992) ....................................................................22

*McLaughlin v. Ho Fat Seto*,
   850 F.2d 586 (9th Cir. 1988) ......................................................................22

*Messner v. NorthShore Univ. Health Sys.,*
   699 F.3d 802 (7th Cir. 2012) ......................................................................16

*Morgan v. Family Dollar Stores, Inc.,*
   551 F.3d 1233 (11th Cir. 2008) .............................................................21, 22

*Pella Corp. v. Saltzman,*
   606 F.3d 391 (7th Cir. 2010) ......................................................................19

*Reich v. Gateway Press, Inc.,*
   13 F.3d 685 (3d Cir. 1994) .........................................................................22

*Reich v. Southern New England Telecomms. Corp.*,
121 F.3d 58 (2d Cir. 1997) ...........................................................22

*Settlement Home Care, Inc. v. Indus. Bd. of Appeals of Dep't of Labor*,
151 AD2d 580 (2d Dept 1989) ......................................................7

*Tennessee Coal Co. v. Muscoda Local,*
321 U.S. 590 (1944).......................................................................7

*Tho Dinh Tran v. Alphonse Hotel Corp.*,
281 F.3d 23 (2d Cir. 2002) ...........................................................21

*U. S. Dept. of Labor v. Cole Enters.*,
62 F.3d 775 (6th Cir. 1995) .........................................................22

*United States v. Darby*,
312 U.S. 100 (1941)........................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011).............................................14, 15, 18, 24

*Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*,
No. 12-3176, 2013 U.S. App. LEXIS 13842,
(10th Cir. July 9, 2013) ................................................................16

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
594 F.3d 1087 (9th Cir. 2010) ...............................................17, 18

## Statutes, Regulations and Rules

29 U.S.C. § 202(a) ............................................................................6, 7

29 U.S.C. § 202(b) ............................................................................6

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201 *et seq* ..........*passim*

Fed. R. App. P. 29(c)(5) ...................................................................1

Fed. R. Civ. P. 23, Advisory Comm. Notes ................................15, 19, 20

Fed. R. Civ. P. 23(b)(2) ....................................................................14

Fed. R. Civ. P. 23(b)(3) ...................................................................*passim*

Fed. R. Civ. P. 23(c)(4) ....................................................................19

N.Y. Labor Law § 650 ......................................................................7, 8

N.Y. Labor Law § 196-a ...................................................................21

Second Circuit Local Rule 29.1 .........................................................1, 2

**Other Authorities**

William G. Whittaker, Congressional Research Service Report for Congress,
*The Fair Labor Standards Act: Minimum Wage in the 108th Congress*
(2005) ..................................................................................................................6

Bureau of Labor Statistics, U.S. Dep't of Labor,
*May 2012 National Occupational Employment and Wage Estimates United
States*, Food Preparations and Serving Related Occupations
http://www.bls.gov/news.release/pdf/ocwage.pdf  (March 29, 2013) ....................8

Jacquelyn Smith, *The Best and Worst Paying Jobs In America*, Forbes, May 13,
2013,
http://www.forbes.com/sites/jacquelynsmith/2013/05/13/ the-best-and-
worst-paying-jobs-in-america-2 .............................................................................9

## STATEMENT OF *AMICUS CURIAE*[1]

The National Employment Lawyers Association (NELA) advances employee rights and serves lawyers who advocate for equality and justice in the American workplace.  Founded in 1985, NELA is the country's largest professional organization exclusively comprising lawyers representing individual employees in cases involving labor, employment and civil rights disputes.  NELA and its 68 circuit, state, and local affiliates have more than 3,000 members nationwide committed to working for those who have been illegally treated in the workplace.  As part of its advocacy efforts, NELA supports precedent setting litigation and has filed dozens of *amicus curiae* briefs before this Court and other federal appellate courts to ensure that the goals of workplace statutes are fully realized.  In particular, NELA is an organization dedicated to securing enforcement of state, federal, and local laws, regulations, and ordinances that have been enacted for the purpose of protecting workers in the area of wages, hours, and working conditions, thereby promoting the general welfare.

---

[1]    Pursuant to Rule 29(c)(5), Fed. R. App. P. 29(c)(5), and Second Circuit Local Rule 29.1, NELA states that its counsel authored this brief in whole: (A) no party and no party's counsel authored the brief in whole or in part; (B) no party and no party's counsel contributed money that was intended to fund preparing or submitting the brief; and (C) no person or entity, other than NELA, its members and its counsel, contributed money that was intended to fund preparation or submission of this brief.

NELA's mission is particularly implicated when litigation affects low-wage workers. According to the United States Bureau of Labor Statistics, restaurant employees are habitually among the lowest paid jobs in the country. Thus, unlawful wage payments to employees of casual dining operations result in wage loss to those least able to suffer the loss. Of course, that is reason enough to oppose such practices, but it is not the only reason: remedial laws like the New York Labor Law and the Fair Labor Standards Act were enacted not only to improve the plight of those working at the economic margins, but also in recognition that goods produced under substandard labor conditions result in unfair competition, drive down wages and erode working conditions.

Accordingly, NELA respectfully submits[2] this brief in support of Plaintiffs-Appellants, pursuant to Rule 29 of the Federal Rules of Appellate Procedure and Rule 29.1 of the Local Rules of the Second Circuit Court of Appeals.

## SUMMARY OF THE ARGUMENT

Like the federal Fair Labor Standards Act, the New York Labor Law (NYLL) at issue here is a remedial statute, enacted to eliminate labor conditions detrimental to the minimum necessary standard for the health and well-being of

---

[2]     Plaintiffs-Appellants and Defendants-Appellees have consented to the filing of this brief.

New York employees.  Like the FLSA, the NYLL recognizes that such conditions hurt the employees directly affected, but also constitute unfair competition, threaten industry, and all too often foist the real costs of substandard employment onto the public weal.

The district court interpreted the Supreme Court's recent decision in *Comcast* as holding that 'individual damage calculations' among putative class members foreclose a finding of predominance, and thus thwart class certification.  If that interpretation is correct, the *Comcast* ruling would sweep away 'legions' of cases that hold that individualized damages are not a bar to class certification, and without a single word that it was doing so.  *Comcast* would be the 'stake in the heart' of the class action mechanism; certainly so for off-the-clock wage and hour cases, where damages between class members are rarely identical.

But that interpretation is not correct, as appellate decisions since *Comcast* have determined.  Rulings in the Sixth, Seventh, and Ninth Circuits have held, and the Tenth Circuit has acknowledged, that individualized damages inquiries do not foreclose a predominance finding.  As the misreading of *Comcast* was the only basis for the district court's denial of class certification on the spread-of-hours and rest-break claims, Plaintiffs are entitled to certification of those claims.

The repercussions of the district court's erroneous interpretation are grave, particularly in class actions that seek to recover wages.  Under state wage and hour

3

laws, like the New York law at issue here, and under the federal FLSA, employers are charged not only with properly paying their employees, but with the corollary obligation of maintaining proper time and payroll records so that the lawful wage payment is documented.  A substantial body of law has sprung up since the Supreme Court's 1946 decision in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946), now codified in some state laws, including New York's, that prescribe the consequences for an employer's failure to maintain accurate time records where an employee establishes that she performed work that the employer did not properly compensate.

Under that circumstance, *Mt. Clemens* allows the employee to establish her damages as "a matter of just and reasonable inference."  The 'just and reasonable inference' standard allows a court to make a damages award from inferences about the amount and extent of work performed by an employee, based on the proofs the employee is able to muster, including by plaintiff testimony, even if that award is approximate.

Closely entwined with the 'just and reasonable inference' standard is the form that those proofs may take.  Although the *Mt. Clemens* decision did not use the term "representative evidence," that ruling is widely cited by courts as authorizing representative evidence so that the testimony for some employees will serve as evidence of damages for non-testifying employees.  The use of

4

representative evidence in the context of wage actions is "well established," as this Court has held since at least 1997.

The district court's decision here nullifies those *Mt. Clemens* mechanisms: there can be no 'just and reasonable inference,' no burden-shifting, no representative evidence, if a class cannot be certified because employees lack the time data that the employers failed to keep in violation of its lawful obligation to do so.

Indeed, the result here offers incentive to those employers *not* to keep such records. The Supreme Court in *Mt. Clemens* identified just that injustice: "Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act."

If liability is established on the merits, the employees here who were denied earned wages under New York law will be entitled to a procedural vehicle equal to the task of correcting the widespread violation of that law.

# ARGUMENT

I.     Like The Fair Labor Standards Act, The New York Labor Law Is A Remedial
       Statute Enacted To Eliminate Substandard Wages, And Restaurant Workers,
       Consistently Ranked Among The Lowest Paid Jobs In The Country, Have A
       Particular Need For The Protections Of The NYLL

After decades of academic research in the early 20th Century,[3] Congress

concluded in 1938 that labor conditions detrimental to the minimum necessary

standard for the health and well-being of workers were pervasive.  29 U.S.C.

§202(a).  To eliminate those conditions, Congress passed the Fair Labor Standards

Act.  29 U.S.C. §202(b).

> The Congress hereby finds that the existence, in industries engaged in
> commerce or in the production of goods for commerce, of labor conditions
> detrimental to the maintenance of the minimum standard of living necessary for
> health, efficiency, and general well-being of workers (1) causes commerce and
> the channels and instrumentalities of commerce to be used to spread and
> perpetuate such labor conditions among the workers of the several States; (2)
> burdens commerce and the free flow of goods in commerce; (3) constitutes an
> unfair method of competition in commerce; (4) leads to labor disputes
> burdening and obstructing commerce and the free flow of goods in commerce;
> and (5) interferes with the orderly and fair marketing of goods in commerce.

29 U.S.C. §202(a); *Citicorp Industrial Credit, Inc., v. Brock*, 483 U.S. 27, 36 n.8

(1987).  This "minimum standard of living" at the heart of congressional concern

was emphasized by the Supreme Court a half-dozen years later:

---

[3]     *See* William G. Whittaker, Congressional Research Service Report for
Congress, *The Fair Labor Standards Act: Minimum Wage in the 108th Congress*
(2005), Summary.

6

> [T]hese provisions, like the other portions of the Fair Labor Standards Act, are remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others.

*Tennessee Coal Co. v. Muscoda Local,* 321 U.S. 590, 597 (1944).[4]

Improving the plight of workers was not Congress' only concern.  29 U.S.C. §202(a); *Citicorp Indust.,* 483 U.S. at 36-37.  Congress recognized that goods produced under substandard labor conditions result in unfair competition, and drive down wages and working conditions.  *Id.,* at 36 n.8.  Aside from their effect, such practices are themselves pernicious and "injurious to the commerce."  *United States v. Darby*, 312 U.S. 100, 115 (1941).

These same impulses motivated the New York Labor Law.  N.Y. Lab. L. § 650; *see also Settlement Home Care, Inc. v. Indus. Bd. of Appeals of Dep't of Labor*, 151 AD2d 580, 581 (2d Dept 1989) *quoting* N.Y. Lab. L. § 650 (state minimum wage law "remedial legislation designed to relieve the financial hardship experienced by persons employed in occupations 'at wages insufficient to provide adequate maintenance for themselves and their families.'").  The NYLL public policy statement recognizes that there are individuals employed in New York paid wages "insufficient to provide adequate maintenance for themselves and their

7

families." N.Y. Lab. L. § 650.  Like the FLSA congressional statement, the New

York policy statement recognizes that the harm of employment at substandard wage

rates exceeds the impact on the affected employees:

> Such employment . . . constitutes unfair competition against other employers and their employees, threatens the stability of industry . . . [may require] wages be supplemented by the payment of public moneys for relief or other public and private assistance . . . [and] threatens the health and well-being of the people of this state and injures the overall economy.

*Id.*

Restaurant positions, including wait staff, hosts, dishwashers, and cashiers,

are among the lowest paid jobs in the country.  Bureau of Labor Statistics, U.S.

Dep't of Labor, *May 2012 National Occupational Employment and Wage Estimates*

*United States*, Food Preparations and Serving Related Occupations (Cooks,

Restaurant: $23,300.00; Bartenders: $21,630.00; Waiters and Waitresses:

$20,710.00; Dishwashers: $18,930.00; Host and Hostesses, Restaurant, Lounge and

Coffee Shop: $19,570.00), http://www.bls.gov/oes/current/oes_nat.htm; *Occupation*

*Employment and Wages – May 2012,*  http://www.bls.gov/news.release/pdf/-

ocwage.pdf (March 29, 2013), ("Restaurants and other eating places, in the

accommodation and food services sector, had the lowest mean wage in May 2012 at

---

[4]      Since 1944, numerous courts have referenced the remedial and humanitarian nature of the Act.  *See e.g.*, *Goldberg v. Wade Lahar Const. Co.*, 290 F.2d 408, 415 (8th Cir. 1961).

8

$21,520"); Jacquelyn Smith, *The Best and Worst Paying Jobs In America*, Forbes,

May 13, 2013, http://www.forbes.com/sites/jacquelynsmith/2013/05/13/

the-best-and-worst-paying-jobs-in-america-2, *citing* Bureau of Labor Statistics

(restaurant employees hold six of ten lowest paid positions in country).


II.    The District Court's Interpretation Of *Comcast*, That *No* Class Can Be Certified
       Under Rule 23(b)(3) If Individualized Damages Inquiries Must Be Made, Is
       Erroneous, And Has Been Rejected By Other Circuits Considering That
       Interpretation

In denying class certification of Plaintiffs' spread-of-hours and rest-break

claims, the district court relied on its interpretation of the Supreme Court's

predominance analysis in *Comcast*.  Special App. at 5, 6, 9-10.  According to that

interpretation, *Comcast* stands for the proposition that no class of similarly-situated

persons can meet the predominance prong of Rule 23(b)(3) without class-wide

proof, because "individual damage calculations will inevitably overwhelm

questions common to [the] class." *Id.* at 10.

The district court's interpretation of *Comcast* is not correct.  The peculiarities

of antitrust law, at least as it stands in the Third Circuit, set the stage for the

Supreme Court's ruling, and to attempt to apply it to other areas of the law that lack

those unique features is a mistake.  In fact, just weeks before the *Comcast* decision

issued, the Supreme Court ruled in *Amgen Inc. v. Connecticut Ret. Plans & Trust*

9

*Funds*, 133 S. Ct. 1184 (2013), that a plaintiff seeking Rule 23(b)(3) class certification had no obligation to show that every element of the class claim was capable of class-wide proof: only that common questions predominate over individual ones.

As to those other areas of the law, the *Comcast* decision merely stands for the unremarkable proposition that "a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide *injury* that the suit alleges." *Butler v. Sears, Roebuck and Co.,* 727 F.3d 796, 800 (7th Cir. 2013) (emphasis in original).

The district court's reading of *Comcast* as requiring class-wide proof of damages to meet predominance is a radical one that, if correct, would upend settled class action law in this Circuit and all others, and all without a whisper from the Supreme Court that the cataclysm was underway. In the words of a recent Seventh Circuit decision, such a requirement "would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages." *Butler,* 727 F.3d at 801.

The *Comcast* decision does not mandate that outcome.

10

A.    Under Third Circuit Case Law, Elements Of The Antitrust Class
       Claim In *Comcast* Had To Be Susceptible To Common Proof

To prevail on the merits of an antitrust claim, in addition to proving a violation of antitrust law, a plaintiff must establish "individual injury" and measurable damages. *Behrend v. Comcast Corp.*, 264 F.R.D.150, 156 (E.D. Pa. 2010) *citing In Re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 311 (3d Cir. 1984).  The individual injury, also called "antitrust impact," is distinct from damages: impact is proof that the antitrust injury occurred; damages are the actual value of that injury. *In Re Hydrogen Peroxide*, 552 F.3d at 311.  "Importantly, individual injury (also known as antitrust impact) is an element of the cause of action; to prevail on the merits, every class member must prove at least some antitrust impact resulting from the alleged violation." *Id.*

The plaintiffs in *Comcast* brought an antitrust class action, alleging that the company violated the Sherman Act by anticompetitive conduct. *Behrend, et al. v. Comcast Corp., et al.,* 655 F.3d 182, 186 (3d Cir. 2011). The district court first granted class certification on May 3, 2007.  *Id.* at 187.  That court held that the antitrust impact and the damages elements must be susceptible to common proof. 264 F.R.D. at 154.  The need to prove damages class-wide, based on a common methodology, was never challenged by plaintiffs.  *Comcast Corp. v. Behrend*. ___

11

U.S. ___, 133 S. Ct. 1426, 1430 (2013); *id.* at 1437 (Ginsburg and Breyer, JJ., dissenting).[5]

Following the Third Circuit's decision in *Hydrogen Peroxide*, the district court granted in part Comcast's motion to reconsider, limited to the predominance prong of Rule 23(b)(3). *Id.* at 188. After a four-day hearing, consideration of nearly three-dozen expert reports and oral argument, the district court recertified the class on January 13, 2010. The court determined that the plaintiffs could establish antitrust impact on the theory that Comcast's "clustering" practice deterred "overbuilder" competition and, through models of their expert, could do so class wide. *Id.* The court did, however, limit plaintiffs to the overbuilder theory, thus rejecting the other theories of antitrust impact. *Id.* That decision was affirmed by the Third Circuit panel.[6] *Id.* at 208.

The Supreme Court disagreed. 133 S. Ct. at 1435. The Court held that because the expert's report could not parse the impact attributable to diminished

---

[5]    The Court's reformulation of the question presented, and subsequent further narrowing, 133 S. Ct. at 1435-36 (Ginsburg and Breyer, JJ., dissenting), suggests that this case has a peculiar procedural history as well as a substantive one.

[6]    One panel member, Judge Jordan, while concurring on the judgment as to class-wide proof of antitrust impact, disagreed that damages could be proven using class-wide evidence. That judge proposed vacating and remanding as to that issue, with instructions to the district court to determine whether the class could be divided into subclasses for damages purposes.

12

overbuilder competition, with the impact from the other theories the plaintiffs had originally advanced, the plaintiffs could not establish class-wide damages attributable solely to the remaining theory.  *Id.*

> B.    Cases Certifying Rule 23(b)(3) Class Actions, Despite The Necessity Of Individual Damage Determinations, Are 'Legion,' And The *Comcast* Decision Does Nothing To  Affect Those Holdings

By its own terms, the *Comcast* ruling is a "straightforward application of class certification principles . . .."  133 S. Ct. at 1433. The straightforward application of those principles cannot yield the upheaval that widespread application of the district court's ruling would cause to class action law.

> 1.    Prior To *Comcast,* "Legions" Of Cases Held That Rule 23(b)(3) Classes Can Be Certified Even Where Damages Required Individual Calculation

One enduring class certification principle is that a liability finding, applicable across the class, will justify class certification even if individual damages determinations are necessary.  *In re Visa Check/ MasterMoney Antitrust Litig.,* 280 F.3d 124, 140-41 (2d Cir. 2001). There are "legions" of such appellate cases across the circuits, creating a consensus "well nigh universal."  *Comcast*, 133 S. Ct. at 1437 (Ginsburg and Breyer, JJ., dissenting) (citing cases).

13

The *Comcast* opinion was written by Justice Scalia.  Justice Scalia also wrote another recent Supreme Court decision that garnered substantial comment. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011). This is what Justice Scalia wrote in *Dukes*:

> Given that structure [of Rule 23], we think it clear that *individualized monetary claims belong in Rule 23(b)(3)*. The procedural protections attending the (b)(3) class--predominance, superiority, mandatory notice, and the right to opt out--are missing from (b)(2) not because the Rule considers them unnecessary, but because it considers them unnecessary *to a (b)(2) class*. When a class seeks an indivisible injunction benefitting all its members at once, there is no reason to undertake a case-specific inquiry into whether class issues predominate or whether class action is a superior method of adjudicating the dispute. Predominance and superiority are self-evident. *But with respect to each class member's individualized claim for money*, that is not so—which is precisely why (b)(3) requires the judge to make findings about predominance and superiority before allowing the class.

131 S. Ct. at 2558-59 (emphasis added).

That statement by Justice Scalia stands in direct opposition to the district court's view here that *Comcast* precludes class certification where individual damages determinations may be required.  If individualized damages inquiries "inevitably overwhelm" common questions, as the court ruled, such claims could never meet predominance and Justice Scalia's placement of "individualized monetary claims" within the ambit of Subsection (b)(3) would be meaningless.

But there is even more recent authority than the 2011 *Wal-Mart* decision. Just one month before *Comcast*, the Supreme Court decided *Amgen*.  In that opinion

14

the Court held that "Rule 23(b)(3) . . . does *not* require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'" *Id.* at 1196 (emphasis in original) (rejecting statement to the contrary in dissent). "What the rule does require is that common questions "*predominate* over any questions affecting only individual [class] members." *Id.* (emphasis in original) *quoting* Fed. R. Civ. P. 23(b)(3).

Here, the district court's view of *Comcast* simply does not square with *Amgen* or *Dukes.* Whether *Comcast* has broader application in the antitrust sphere remains to be seen. *See* 133 S. Ct. at 1437 (Ginsburg and Breyer, JJ., dissenting) ("The Court's ruling is good for this day and this case only."). But the district court's interpretation of *Comcast* as precluding a predominance finding in this wage and hour case is not correct.

The central question on predominance is whether the class action would "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) *quoting* Fed. R. Civ. P. 23, Advisory Comm. Notes. Plaintiffs here demonstrated that certification of the spread-of-hours and rest-break claims would achieve that efficiency.

2.    Appellate Decisions After *Comcast* Continue To Hold That Individualized Damages Inquiries Do Not Preclude Rule 23(b)(3) Class Certification

The four appellate rulings in Rule 23(b)(3) cases decided after *Comcast* are likewise contrary to the conclusion reached by the district court.  *Butler*, 727 F.3d at 801; *Leyva v. Medline Indust., Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013); *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, No. 10-4188, 2013 U.S. App. LEXIS 14519, at *49-52 (6th Cir. July 18, 2013); *see also Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc*., 12-3176, 2013 U.S. App. LEXIS 13842, 2013 WL 3389469, at *17 (10th Cir. July 9, 2013) (remanding to district court for predominance analysis, but stating that individualized damages, standing alone, do not thwart class certification, and class may be certified for purposes of liability determination only).

In *Butler,* the Seventh Circuit noted that predominance does *not* require "common results for members of the class," nor does it require "common proof of damages for class members."  727 F.3d at 801, *quoting Messner v. NorthShore Univ. Health Sys.,* 699 F.3d 802, 819 (7th Cir. 2012).  "Rule 23(b)(3) does not impose such a heavy burden." *Id.*, *quoting Messner,* 699 F.3d at 819.

Indeed, *Butler* affirmed the black-letter rule that individualized damages

16

inquiries do *not* defeat class certification.  727 F.3d at 801.

> If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, *the fact that damages are not identical across all class members should not preclude class certification.*

*Id.* (emphasis added).

In *Leyva*, a wage and hour case, the district court denied certification to a class of employees alleging various California state law wage claims, including 'off the clock' violations.  716 F.3d at 512.  The district court found that, while common issues predominated related to the employer's liability under California state law, the damages inquiry would be "highly individualized." *Id.* at 513. "[T]he Court would need to determine the extent to which each putative class member lost wages and, consequently, suffered damages. Since there are more than 500 putative class members, this process would tax the Court's resources."  *Id.*

In reversing the district court with instructions to grant class certification, the Ninth Circuit held that the court abused its discretion and "used the wrong legal standard" when it denied certification on the basis that damages calculations would be individual.  *Id.* at 513.  "The only individualized factor that the district court identified was the amount of pay owed.  'In this circuit, however, damage calculations alone cannot defeat certification.'" *Id.* at 513 *quoting Yokoyama v.*

17

*Midland Nat'l Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010).

Because the *Leyva* decision addresses the congruence of *Comcast* and wage and hour class action, or rather, incongruence, the Court's indulgence of an extended quotation is requested:

> The district court denied certification because for each sub-class "the damages inquiry will be highly individualized." *But damages determinations are individual in nearly all wage-and-hour class actions. Brinker Rest. Corp. v. Superior Court,* 273 P.3d 513, 546 (Cal. 2012) ("In almost every class action, factual determinations of damages to individual class members must be made. Still we know of no case where this has prevented a court from aiding the class to obtain its just restitution. Indeed, to decertify a class on the issue of damages or restitution may well be effectively to sound the death-knell of the class action device.") (internal citation and quotation marks omitted). Thus, "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975); *see also Yokoyama,* 594 F.3d at 1089 ("The potential existence of individualized damage assessments. . . does not detract from the action's suitability for class certification."). In deciding otherwise, the district court abused its discretion by applying the wrong legal standard. *See Hinkson,* 585 F.3d at 1263.
>
> Indeed, the Supreme Court clarified in *Dukes* that "individualized monetary claims belong in Rule 23(b)(3)." 131 S. Ct. at 2558. Thus, the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3). It is true that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability. *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1435 (2013) ("The first step in a damages study is the translation of the legal theory of the harmful event into an analysis of the economic impact of that event.") (internal quotation marks omitted). In *Comcast*, the Supreme Court reversed an order granting class certification because the plaintiffs relied on a regression model that "did not isolate damages resulting from any one theory of antitrust impact." *Id. at 1431*. The Court concluded that "a model

purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory." *Id.* at 1433.

*Leyva*, 716 F.3d at 513-14 (emphasis added).

Thus, the *Comcast* decision simply stands for the proposition that "a damages suit cannot be certified to proceed as a class action unless the damages sought are the result of the class-wide *injury* that the suit alleges." *Butler*, 727 F.3d at 799 (emphasis in original); *Leyva*, 716 F.3d at 514 (the plaintiff must be able to show that damages stem from defendant's conduct that created the legal liability); *In re Whirlpool Corp.,* 2013 U.S. App. LEXIS 14519, at *50 (citing *Leyva*).

Like the injuries in *Butler*, or those in *Leyva,* the damages here flow from Plaintiffs' theory of liability on the spread-of-hours and rest-break claims.

Further, as Judge Posner noted in *Butler,* Rule 23(c)(4) permits liability-only class certification, "and will often be the sensible way to proceed." *Butler*, 727 F.3d at * 801, *citing* Fed. R. Civ. P. 23, Advisory Comm. Notes; *Pella Corp. v. Saltzman,* 606 F.3d 391, 393-94 (7th Cir. 2010) (per curiam).

More broadly, *Butler* reaffirms the central touchstone of class action litigation generally, and the predominance prong in particular: efficiency. *Butler*, 727 F.3d at *798, 799, 800. "[T]he more claimants there are, the more likely a class action is to yield substantive economies in litigation. It would hardly be an

19

improvement to have in lieu of this single class action 17 million suits each seeking

damages of $15 to $30." *Id.* at 14, *quoting Carnegie v. Household Int'l, Inc.*, 376

F.3d 656, 661 (7th Cir. 2004). Indeed, the central question on predominance is

whether the class action would "achieve economies of time, effort, and expense,

and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) *quoting* Fed. R. Civ. P.

23, Advisory Comm. Notes.

Plaintiffs here have demonstrated those economies will be achieved with

certification of the spread-of-hours and rest-break claims.


III.   An Interpretation Of *Comcast* As Precluding Predominance In Wage And Hour
       Class Actions Where Individualized Owed Wages Vary Among Employees
       Clashes Directly With The 'Just And Reasonable Inference' Standard And
       Representative Evidence Derived From The Supreme Court's Decision In *Mt.
       Clemens*

Where an employer fails to maintain proper time records, an employee can

establish damages by producing "sufficient evidence to show the amount and extent

of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens

Pottery Co.,* 328 U.S. 680, 687-88 (1946); *Grochowski v. Phoenix Const*., 318 F.3d

80, 87-88 (2d Cir. 2003); *see also Kalloo v. Unlimited Mech. Co. of NY,* 2013 U.S.

20

Dist. LEXIS 147487, at *28-29 (E.D. N.Y. Oct. 10, 2013) *citing* N.Y. Lab. L. §

196-a (New York Labor Law mirrors the FLSA with regard to the burden of proof

where an employer has failed to keep proper employment records).

> When accurate records or precise evidence of the hours worked do not exist,
> "an employee has carried out his burden if he proves that he has in fact
> performed work for which he was improperly compensated and if he
> produces sufficient evidence to show the amount and extent of that work as a
> matter of just and reasonable inference."

*Tho Dinh Tran v. Alphonse Hotel Corp*., 281 F.3d 23, 31 (2d Cir. 2002) *quoting Mt.*

*Clemens,* 328 U.S. at 687.

The 'just and reasonable inference' standard allows a court to make

inferences about the amount and extent of work performed by an employee based

on the proofs the employee is able to muster, and this may be by plaintiff testimony.

*See, e.g., Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1278-79 (11th Cir.

2008) (citing cases and explaining representative evidence and *Mt. Clemens*); *Allen*

*v. Board of Public Educ.,* 495 F.3d 1306, 1317-18 (11th Cir. 2007) (employee

testimony sufficient to prevail); *Tho Dinh Tran, supra,* 281 F.3d at 31 (2d Cir.

2002) (employee's testimony, corroborated by co-worker, satisfies *Mt. Clemens*

standard); *Kolesnikow v. Hudson Valley Hosp*., 05 Civ. 09858 (PGG), 2009 U.S.

Dist. LEXIS 42857, * 49 (S.D.N.Y. May 20, 2009) (employee can meet *Mt.*

*Clemens* burden solely by her recollection).

The evidence that the employee adduces can be "representative." *Grochowski,* 318 F.3d at 87.  Indeed, it is well established that an overall damage award can be reasonably inferred for a group of employees where only some of those employees testified as to hours worked and wages paid.  *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 66-68 (2d Cir. 1997); *Morgan,* 551 F.3d at 1279; *U. S. Dept. of Labor v. Cole Enters.,* 62 F.3d 775, 781 (6th Cir. 1995); *Reich v. Gateway Press, Inc.,* 13 F.3d 685, 701 (3d Cir. 1994); *Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th Cir. 1992); *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1298 (3d Cir. 1991); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988).

The district court's conclusion that *Comcast* forbids a finding of predominance where damages require individualized inquiries, even where those individual computations are necessitated by the employer's failure to maintain time records, is not consistent with the Supreme Court's ruling in *Mt. Clemens*, and the many appellate decisions since that case.  In *Mt. Clemens* the Court recognized, not too long after passage of the FLSA itself, that unscrupulous employers could thwart employees seeking unpaid compensation by the simple expedient of not maintaining accurate time records.  Without those records, and with no adequate substitutes, employees could establish liability and then fail to prove damages to the certainty

22

the law customarily requires.

> The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act.

328 U.S. at 687.

The district court's solution to this "more difficult problem," *id.*, is to place the burden of the employer's non-compliance on the improperly compensated employees.  Because cases with individualized damages, "nearly all wage-and-hour class actions," *Leyva*, 716 F.3d at 513, could never attain class certification under the court's formulation, an employer's failure to make accurate time records would ensure that the employer keeps the benefit of the employees' labor without due compensation – the very reason the *Mt. Clemens* Court crafted mechanisms to ensure employee compensation "though the result be only approximate," 328 U.S. at 688.

## CONCLUSION

The district court's interpretation of *Comcast* is erroneous: the Supreme Court did not change the "well nigh universal" black-letter rule that the predominance prong of Rule 23(b)(3) can be met where damages require individualized computation.  The Court's "straightforward application of class

23

certification principles" could not have then turned about and excised one of those very principles, nor could the Court's earlier rulings in *Amgen* and *Dukes* countenanced such a consequential upset.

That this black-letter rule is untouched by *Comcast* is reflected in the appellate decisions, *Butler, Glazer, Leyva* and *Roderick*, since the Supreme Court ruling in March.

At one end of the spectrum is the antitrust class action; far at the other end of that spectrum, beyond class actions of all other subject matter, is the wage and hour class action. The Supreme Court decision in *Mt. Clemens* place wage and hour cases at that nether end, cognizant of the fact that by law, the obligation to pay employees properly, and to document those wage payments, rests with employers. Where an employer fails in both those obligations, *Mt. Clemens* holds that the consequences of that failure must also rest with the employer. The district court's decision here places the employer's failure on the employees, and that ruling cannot stand.

*Amicus Curiae* National Employment Lawyers Association asks this Court to reverse the district court's denial of class certification on the spread-of-hours and rest-break claims, to order that the district court certify those claims for class treatment, and to remand for further proceedings.

24

Respectfully submitted,


/s/ Jamie G. Sypulski
Jamie G. Sypulski
One of the Attorneys for *Amicus Curiae*
National Employment Lawyers Association


Jamie G. Sypulski
Law Office Jamie Golden Sypulski
150 North Michigan Avenue
Suite 1000
Chicago, Illinois 60601
312/332-6202

Terisa E. Chaw
National Employment Lawyers
Association
417 Montgomery Street
Fourth Floor
San Francisco, CA 94104
415/296-7629


Attorneys for *Amicus Curiae*
National Employment Lawyers Association

Douglas M. Werman
Werman Law Office, P.C.
77 West Washington Street
Suite 1402
Chicago, Illinois 60602
312/419-1008

25

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. Civ. Pro. 32(a)(7)(B) because this brief contains 5,677 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

<u>/s/ Jamie G. Sypulski</u>